## IN THE UNITED STATES DISTRICT COURT
## THE EASTERN DISTRICT OF NEW YORK

NARRAGANSETT BAY INSURANCE COMPANY as
subrogee of WAGIH SAWERIS,

         Plaintiffs,

v.

NEW WIDETECH INDUSTRIES CO., LTD., RICH
ACHIEVER INC. LLC, WHIRLPOOL CORPORATION,
COSTCO WHOLESALE CORPORATION, ABC
CORPORATIONS 1-10 and JOHN DOES 1-10,

         Defendants.

**FIRST AMENDED ANSWER TO
PLAINTIFF'S COMPLAINT**

Case No: 2:23-cv-05227-AMD-JMW

  WHIRLPOOL CORPORATION ("WHIRLPOOL") hereby answers the
Complaint filed by Plaintiff NARRAGANSETT BAY INSURANCE COMPANY as
subrogee of WAGIH SAWERIS.

  1.  At- all times hereinafter mentioned, plaintiff Narragansett Bay Insurance
Company (hereinafter "Narragansett") was and still is a foreign corporation, organized and
existing under and by virtue of the laws of the State of Rhode Island, and was duly authorized to
transact the business of insurance in the State of New York. Plaintiff maintains its offices for the
transaction of business at 25 Maple Street, Pawtucket, Rhode Island 02860.

  **RESPONSE:** WHIRLPOOL has insufficient information to either admit or deny the
allegations in Paragraph 1 of the Complaint and, therefore, denies same.

  2.  At all times hereinafter mentioned, plaintiff's subrogor, Wagih Saweris
(hereinafter referred to as "Saweris") was and still is a resident of the state of New York and the
owner of the property and premises located at 44 Green Drive, Roslyn, New York 11576
(hereinafter the "Property").

  **RESPONSE:** WHIRLPOOL has insufficient information to either admit or deny the
allegations in Paragraph 2 of the Complaint and, therefore, denies same.

1

3.     At all times hereinafter mentioned defendant New Widetech Industries Co. Ltd. (hereinafter referred to as "Widetech") was and still is a foreign corporation, maintaining offices for the transaction of business at 358 Yongkehuan Road, YongKang District, Tainan City, Taiwan.

**RESPONSE:**   WHIRLPOOL has insufficient information to either admit or deny the allegations in Paragraph 3 of the Complaint and, therefore, denies same.

4.     At all times hereinafter mentioned defendant Rich Achiever Inc. LLC (hereinafter referred to as "RAI") was and still is a foreign limited liability company, maintaining offices for the transaction of business at 1000 North West Street, Suite 1501, Wilmington, Delaware 19801.

**RESPONSE:**   WHIRLPOOL has insufficient information to either admit or deny the allegations in Paragraph 4 of the Complaint and, therefore, denies same.

5.     At all times hereinafter mentioned defendant Whirlpool Corporation (hereinafter referred to as "Whirlpool") was and still is a foreign corporation, maintaining offices for the transaction of business at 2000 North M-63, Benton Harbor, Michigan, 49022

**RESPONSE:**   WHIRLPOOL admits the allegations in Paragraph 5 of the Complaint.

6.     At all times relevant hereto, defendant Costco Wholesale Corporation (hereinafter referred to as "Costco") was and still is a foreign corporation, maintaining offices for the transaction of business at 999 Lake Drive, Issaquah, Washington 98027.

**RESPONSE:**   WHIRLPOOL has insufficient information to either admit or deny the allegations in Paragraph 6 of the Complaint and, therefore, denies same.

7.     At all times relevant hereto, defendant Widetech was engaged in the business of designing, manufacturing, marketing, advertising, distributing, and selling dehumidifiers.

**RESPONSE:**   WHIRLPOOL has insufficient information to either admit or deny the allegations in Paragraph 7 of the Complaint and, therefore, denies same.

8.     At all times relevant hereto, defendant RAI was engaged in the business of

2

designing, manufacturing, marketing, advertising, distributing, and selling dehumidifiers.

**RESPONSE:**   WHIRLPOOL has insufficient information to either admit or deny the allegations in Paragraph 8 of the Complaint and, therefore, denies same.

9.      At all times relevant hereto, defendant Whirlpool was engaged in the business of designing, manufacturing, marketing, advertising, distributing, and selling dehumidifiers.

**RESPONSE:**   WHIRLPOOL admits that it sells dehumidifiers and denies that it designs or manufacturers dehumidifiers.   As to the remaining allegations, WHIRLPOOL has insufficient information to either admit or deny the allegations in Paragraph 9 of the Complaint and, therefore, denies same.

10.     At all times relevant hereto, defendant Costco was engaged in the business of marketing, advertising, distributing, and selling dehumidifiers.

**RESPONSE:**   WHIRLPOOL admits that Costco sells dehumidifiers.   As to the remaining allegations, WHIRLPOOL  has insufficient information to either admit or deny the allegations in Paragraph 10 of the Complaint and, therefore, denies same.

11.     At all times relevant hereto, Saweris owned, and or possessed a AoenAir and or RAI 70-Pint Dehumidifier Model No. RDH70EDP or Whirlpool 70-Pint Dehumidifier Model No. WDH70EAPW (collectively referred to herein as the "Dehumidifier") which had been purchased from Costco.

**RESPONSE:**   WHIRLPOOL has insufficient information to either admit or deny the allegations in Paragraph 11 of the Complaint and, therefore, denies same.

12.     On or about February 8, 2021, the Property sustained severe damage as a result of a fire which originated in the Dehumidifier (the "Fire").

**RESPONSE:**   WHIRLPOOL has insufficient information to either admit or deny the allegations in Paragraph 12 of the Complaint and, therefore, denies same.

13.     As a result of the Fire and resulting damage to the Property, Saweris sustained

damages exceeding the sum of $1,388,036.95.

**RESPONSE:**   WHIRLPOOL has insufficient information to either admit or deny the allegations in Paragraph 13 of the Complaint and, therefore, denies same.

14.     On August 6, 2021, nearly six (6) months after the Fire, Saweris received an Important Product Safety Recall Notice from Costco and the U.S. Consumer Product Safety Commission concerning the Dehumidifier advising that Widetech had received reports of incidents that resulted in fire and or smoke damage to property.

**RESPONSE:**   WHIRLPOOL has insufficient information to either admit or deny the allegations in Paragraph 14 of the Complaint and, therefore, denies same.

15.     Pursuant to a policy of insurance then in force and effect, and prior to the commencement of this action, plaintiff Narragansett reimbursed its subrogor, Saweris, for the above loss, and thereby became subrogated, to the extent of its payment, to all of Saweris' rights, remedies and causes of action as a result of the loss, including those claims asserted against the defendant herein.

**RESPONSE:**   WHIRLPOOL has insufficient information to either admit or deny the allegations in Paragraph 15 of the Complaint and, therefore, denies same.

### AS AND FOR A FIRST CAUSE OF ACTION AGAINST WIDETECH

16.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "15", inclusive, of the Complaint, with the same force and effect as if set forth herein at length.

**RESPONSE:**   In answering Paragraph 16 of the Complaint, WHIRLPOOL repeats its responses to Paragraphs 1 through 15 of the Complaint above as though fully set forth herein.

17.     Widetech owed a duty of care to. design, manufacture, assemble, distribute, market, sell, service, repair and/or supply the Dehumidifier in a condition safe and free from manufacturing defect for its intended and reasonably foreseeable use.

**RESPONSE:**   As the allegations in this paragraph are not directed to WHIRLPOOL, no

4

answer is required by WHILPOOL.  To the extent an answer is required, WHIRLPOOL has insufficient information to either admit or deny the allegations in Paragraph 17 of the Complaint and, therefore, denies same.

18.     Widetech negligently, carelessly, and/or recklessly breached its duty of care in one or more of the following ways:

a.     designing, manufacturing, and assembling a defective Dehumidifier that Widetech knew, or reasonably should have known, subjected the Property to an unreasonable risk of harm;

b.     marketing, selling, distributing, and/or supplying a defective Dehumidifier that Widetech knew or reasonably should have known subjected the property of plaintiff's subrogor to an unreasonable risk of harm;

c.     failing to design, manufacture, and or supply a Dehumidifier that was safe and free from fire hazards for all reasonably foreseeable uses;

d.     selling and/or distributing a Dehumidifier that Widetech knew or reasonably should have known, subjected the property of plaintiff's subrogor to an unreasonable risk of fire damage;

e.     failing to provide adequate warnings and instruction regarding the risk of malfunction and fire resulting in damage to real and personal property;

f.     failing to comply with applicable local, state, and federal statutes, codes, regulations and generally recognized safety practices and standards;

g.     failing to test and/or inspect the subject the Dehumidifier to determine whether the Dehumidifier could be safely used without posing a risk of injury to life and/or property;

h.     failing to meet the standard of care required by a reasonable manufacturer, distributor, and/or designer in the manufacture, sale, and distribution of the subject Dehumidifier;

i.      failing to analyze prior incidents and injuries as well as predict future incidents through the use of hazard/risk analysis; and

j.      designing, manufacturing, assembling, and selling a Dehumidifier that malfunctioned, causing the Fire.

k.      repairing, servicing and/or otherwise maintaining the Dehumidifier in a manner that Widetech knew or should have known subjected the properly of plaintiff's subrogor to an unreasonable risk of harm, including but not limited to Fire damage.

**RESPONSE:**  As the allegations in this paragraph are not directed to WHIRLPOOL, no answer is required by WHILPOOL.  To the extent an answer is required, WHIRLPOOL has insufficient information to either admit or deny the allegations in Paragraph 18 of the Complaint and, therefore, denies same.

19.      As a direct and proximate result of the negligent acts and/or omissions of Widetech, plaintiff's subrogor sustained damages in an aggregate amount in excess of $1,388,036.95 plus appropriate interest thereon from February 8, 2021.

**RESPONSE:**  As the allegations in this paragraph are not directed to WHIRLPOOL, no answer is required by WHILPOOL.  To the extent an answer is required, WHIRLPOOL has insufficient information to either admit or deny the allegations in Paragraph 19 of the Complaint and, therefore, denies same.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST WIDETECH

20.      Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "19", inclusive, of the Complaint with the same force and effect as if set forth herein at length.

**RESPONSE:**  In answering Paragraph 20 of the Complaint, WHIRLPOOL repeats its responses to Paragraphs 1 through 19 of the Complaint above as though fully set forth herein.

21.      Widetech designed, manufactured, advertised, marketed, distributed, supplied

6

sold, repaired, or maintained and/or serviced the Dehumidifier in a defective condition.

**RESPONSE:**  As the allegations in this paragraph are not directed to WHIRLPOOL, no answer is required by WHILPOOL.  To the extent an answer is required, WHIRLPOOL has insufficient information to either admit or deny the allegations in Paragraph 21 of the Complaint and, therefore, denies same.

22.     The Fire and the subsequent damage to the Property, was caused by and resulted from the negligent, careless, reckless, and grossly negligent, acts and/or omissions of Widetech which is strictly liable by reason of:

a.     designing, manufacturing, advertising, marketing, distributing, selling and/or supplying a defective product which Widetech knew or should have reasonably known would subject plaintiff's subrogor to an unreasonable risk of harm;

b.     designing, manufacturing, advertising, marketing, distributing, selling and/or supplying a defective product which Widetech knew or should have known would endanger the real and personal property of plaintiff's subrogor;

c.     failing to properly and adequately warn of the limitations of said product;

d.     failing to provide adequate and sufficient warnings with respect to the Dehumidifier which thereby rendered the Dehumidifier defective and unreasonably dangerous;

e.     failing to distribute and/or supply a product that was safe for its reasonably foreseeable use and intended purpose;

f.     selling and/or supplying a dangerously defective product that posed a fire hazard;

g.     distributing, marketing, selling and/or supplying a product that was not safe for its intended use;

h.     failing to provide adequate and sufficient instructions and warnings with respect to the use of the Dehumidifier, including, but not limited to, a warning that the Dehumidifier or its components could result in a malfunction resulting in fire damage; .

> i. failing to supply and sell a Dehumidifier that was reasonably fit, suitable and safe for its intended purpose;

> j. failing to comply with all local, state and federal codes, regulations, ordinances, standards, recommendations and/or requirements;

> k. designing, manufacturing, and/or assembling a product that was not safe for its intended use;

> l. designing and manufacturing a Dehumidifier that malfunctioned causing the Fire to ensue;

> m. failing to warn of the dangerous propensities of the Dehumidifier when Widetech knew or should have known that the absence of appropriate and sufficient warnings created an unreasonable risk of harm;

> n. failing to manufacture, design, sell, distribute and/or market a Dehumidifier which was safe for its intended use and purpose;

> o. failing to adequately, properly, and sufficiently test and inspect the Dehumidifier which tests and inspections would have revealed the existence of the dangerous condition of the Dehumidifier and/or potential failure of the Dehumidifier;

> p. failing to satisfy and employ proper, accepted, and/or recognized standards for the design and manufacture of its products; and

> q. manufacturing, designing, selling and/or distributing a defective Dehumidifier that defendant knew or reasonably should have known subjected the property of plaintiff's subrogor to an unreasonable risk of fire damage.

**RESPONSE:**  As the allegations in this paragraph are not directed to WHIRLPOOL, no answer is required by WHILPOOL.  To the extent an answer is required, WHIRLPOOL has insufficient information to either admit or deny the allegations in Paragraph 22 of the Complaint and, therefore, denies same.

23. As a direct and proximate result of the negligent acts and/or omissions of

Widetech, plaintiffs subrogor sustained damages in an aggregate amount in excess of $1,388,036.95 plus appropriate interest thereon from February 8, 2021.

**RESPONSE:**  As the allegations in this paragraph are not directed to WHIRLPOOL, no answer is required by WHILPOOL.  To the extent an answer is required, WHIRLPOOL has insufficient information to either admit or deny the allegations in Paragraph 23 of the Complaint and, therefore, denies same.

### AS AND FOR A THIRD CAUSE OF ACTION AGAINST RAI

24.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "23", inclusive, of the Complaint, with the same force and effect as if set forth herein at length.

**RESPONSE:**  In answering Paragraph 24 of the Complaint, WHIRLPOOL repeats its responses to Paragraphs 1 through 23 of the Complaint above as though fully set forth herein.

25.     RAI owed a duty of care to design, manufacture, assemble, distribute, market, sell, service, repair and/or supply the Dehumidifier in a condition safe and free from manufacturing defect for its intended and reasonably foreseeable use.

**RESPONSE:**  As the allegations in this paragraph are not directed to WHIRLPOOL, no answer is required by WHILPOOL.  To the extent an answer is required, WHIRLPOOL has insufficient information to either admit or deny the allegations in Paragraph 25 of the Complaint and, therefore, denies same.

26.     RAI negligently, carelessly, and/or recklessly breached its duty of care in one or more of the following ways:

a.     designing, manufacturing, and assembling a defective Dehumidifier that RAI knew, or reasonably should have known, subjected the Property to an unreasonable risk of harm;

b.     marketing, selling, distributing, and/or supplying a defective Dehumidifier

that RAI knew or reasonably should have known subjected the property of plaintiff's subrogor to an unreasonable risk of harm;

      c.     failing to design, manufacture, and or supply a Dehumidifier that was safe and free from fire hazards for all reasonably foreseeable uses;

      d.     selling and/or distributing a Dehumidifier that RAI knew or reasonably should have known, subjected the properly of plaintiff's subrogor to an unreasonable risk of fire damage;

      e.     failing to provide adequate warnings and instruction regarding the risk of malfunction and fire resulting in damage to real and personal property;

      f.     failing to comply with applicable local, state, and federal statutes, codes, regulations and generally recognized safety practices and standards;

      g.     failing to test and/or inspect the subject the Dehumidifier to determine whether the Dehumidifier could be safely used without posing a risk of injury to life and/or property;

      h.     failing to meet the standard of care required by a reasonable manufacturer, distributor, and/or designer in the manufacture, sale, and distribution of the subject Dehumidifier;

      i.     failing to analyze prior incidents and injuries as well as predict future incidents through the use of hazard/risk analysis; and

      j.     designing, manufacturing, assembling, and selling a Dehumidifier that malfunctioned, causing the Fire.

      k.     repairing, servicing and/or otherwise maintaining the Dehumidifier in a manner that RAI knew or should have known subjected the property of plaintiff's subrogor to an unreasonable risk of harm, including but not limited to Fire damage.

      **RESPONSE:**  As the allegations in this paragraph are not directed to WHIRLPOOL, no answer is required by WHILPOOL.  To the extent an answer is required, WHIRLPOOL has insufficient information to either admit or deny the allegations in Paragraph 26 of the Complaint

and, therefore, denies same.

27.     As a direct and proximate result of the negligent acts and/or omissions of RAI, plaintiff's subrogor sustained damages in an aggregate amount in excess of $1,388,036.95 plus appropriate interest thereon from February 8, 2021.

**RESPONSE:**  As the allegations in this paragraph are not directed to WHIRLPOOL, no answer is required by WHILPOOL.  To the extent an answer is required, WHIRLPOOL has insufficient information to either admit or deny the allegations in Paragraph 27 of the Complaint and, therefore, denies same.

### AS AND FOR A FOURTH CAUSE OF ACTION AGAINST RAI

28.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "27", inclusive, of the Complaint with the same force and effect as if set forth herein at length.

**RESPONSE:**  In answering Paragraph 28 of the Complaint, WHIRLPOOL repeats its responses to Paragraphs 1 through 27 of the Complaint above as though fully set forth herein.

29.     RAI designed, manufactured, advertised, marketed, distributed, supplied, sold, repaired, or maintained and/or serviced the Dehumidifier in a defective condition.

**RESPONSE:**  As the allegations in this paragraph are not directed to WHIRLPOOL, no answer is required by WHILPOOL.  To the extent an answer is required, WHIRLPOOL has insufficient information to either admit or deny the allegations in Paragraph 29 of the Complaint and, therefore, denies same.

30.     The Fire and the subsequent damage to the Property, was caused by and resulted from the negligent, careless, reckless, and grossly negligent, acts and/or omissions of RAI which is strictly liable by reason of:

a.      designing, manufacturing, advertising, marketing, distributing, selling and/or supplying a defective product which RAI knew or should have reasonably known would subject plaintiff's subrogor to an unreasonable risk of harm;

b.      designing, manufacturing, advertising, marketing, distributing, selling and/or supplying a defective product which RAI knew or should have known would endanger the real and personal property of plaintiff's subrogor;

c.      failing to properly and adequately warn of the limitations of said product;

d.      failing to provide adequate and sufficient warnings with respect to the Dehumidifier which thereby rendered the Dehumidifier defective and unreasonably dangerous;

e.      failing to distribute and/or supply a product that was safe for its reasonably foreseeable use and intended purpose;

f.      selling and/or supplying a dangerously defective product that posed a fire hazard;

g.      distributing, marketing, selling and/or supplying a product that was not safe for its intended use;

h.      failing to provide adequate and sufficient instructions and warnings with respect to the use of the Dehumidifier, including, but not limited to, a warning that the Dehumidifier or its components could result in a malfunction resulting in fire damage;

i.      failing to supply and sell a Dehumidifier that was reasonably fit, suitable and safe for its intended purpose;

j.      failing to comply with all local, state and federal codes, regulations, ordinances, standards, recommendations and/or requirements;

k.      designing, manufacturing, and/or assembling a product that was not safe for its intended use;

l.      designing and manufacturing a Dehumidifier that malfunctioned causing the Fire to ensue;

m.      failing to warn of the dangerous propensities of the Dehumidifier when RAI knew or should have known that the absence of appropriate and sufficient warnings created an unreasonable risk of harm;

n.      failing to manufacture, design, sell, distribute and/or market a Dehumidifier which was safe for its intended use and purpose;

o.      failing to adequately, properly, and sufficiently test and inspect the Dehumidifier which tests and inspections would have revealed the existence of the dangerous condition of the Dehumidifier and/or potential failure of the Dehumidifier;

p.      failing to satisfy and employ proper, accepted, and/or recognized standards for the design and manufacture of its products; and

q.      manufacturing, designing, selling and/or distributing a defective Dehumidifier that defendant knew or reasonably should have known subjected the property of plaintiff's subrogor to an unreasonable risk of fire damage.

**RESPONSE:**  As the allegations in this paragraph are not directed to WHIRLPOOL, no answer is required by WHILPOOL.  To the extent an answer is required, WHIRLPOOL has insufficient information to either admit or deny the allegations in Paragraph 30 of the Complaint and, therefore, denies same.

31.      As a direct and proximate result of the negligent acts and/or omissions of RAI, plaintiff's subrogor sustained damages in an aggregate amount in excess of $1,388,036.95 plus appropriate interest thereon from February 8, 2021.

**RESPONSE:**  As the allegations in this paragraph are not directed to WHIRLPOOL, no answer is required by WHILPOOL.  To the extent an answer is required, WHIRLPOOL has insufficient information to either admit or deny the allegations in Paragraph 31 of the Complaint and, therefore, denies same.

**AS AND FOR A FIFTH CAUSE OF ACTION AGAINST WHIRLPOOL**

32.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "31", inclusive, of the Complaint, with the same force and effect as if set forth herein at length.

**RESPONSE:**  In answering Paragraph 32 of the Complaint, WHIRLPOOL repeats its responses to Paragraphs 1 through 31 of the Complaint above as though fully set forth herein.

33.     Whirlpool owed a duty of care to design, manufacture, assemble, distribute, market, sell, service, repair and/or supply the Dehumidifier in a condition safe and free from manufacturing defect for its intended and reasonably foreseeable use:

**RESPONSE:**  This allegation calls for a legal conclusion to which no response is required.  To the extent that a response is required, WHIRLPOOL has insufficient information to either admit or deny the allegations in Paragraph 33 of the Complaint and, therefore, denies same.

34.     Whirlpool negligently, carelessly, and/or recklessly breached its duty of care in one or more of the following ways:

a.      designing, manufacturing, and assembling a defective Dehumidifier that Whirlpool knew, or reasonably should have known, subjected the Property to an unreasonable risk of harm;

b.      marketing, selling, distributing, and/or supplying a defective Dehumidifier that Whirlpool knew or reasonably should have known, subjected the property of plaintiff's subrogor to an unreasonable risk of harm;

c.      failing to design, manufacture, and or supply a Dehumidifier that was safe and free from fire hazards for all reasonably foreseeable uses;

d.      selling and/or distributing a Dehumidifier that Whirlpool knew or reasonably should have known, subjected the property of plaintiff s subrogor to an unreasonable risk of fire damage;

14

       e.      failing to provide adequate warnings and instruction regarding the risk of malfunction and fire resulting in damage to real and personal property;

       f.      failing to comply with applicable local, state, and federal statutes, codes, regulations and generally recognized safety practices and standards;

       g.      failing to test and/or inspect the subject the Dehumidifier to determine whether the Dehumidifier could be safely used without posing a risk of injury to life and/or property;

       h.      failing to meet the standard of care required by a reasonable manufacturer, distributor, and/or designer in the manufacture, sale, and distribution of the subject Dehumidifier;

       i.      failing to analyze prior incidents and injuries, as well as predict future incidents through the use of hazard/risk analysis; and

       j.      designing, manufacturing, assembling, and selling a Dehumidifier that malfunctioned, causing the Fire.

       k.      repairing, servicing and/or otherwise maintaining the Dehumidifier in a manner that Whirlpool knew or should have known subjected the property of plaintiff's subrogor to an unreasonable risk of harm, including but not limited to Fire damage.

**RESPONSE:**  This allegation calls for a legal conclusion to which no response is required.  To the extent that a response is required, WHIRLPOOL denies the allegations in Paragraph 34 of the Complaint.

35.      As a direct and proximate result of the negligent acts and/or omissions of Whirlpool, plaintiff's subrogor sustained damages in an aggregate amount in excess of $1,388,036.95 plus appropriate interest thereon from February 8, 2021.

**RESPONSE:**  This allegation calls for a legal conclusion to which no response is required.  To the extent that a response is required, WHIRLPOOL has insufficient information to either admit or deny the allegations in Paragraph 35 of the Complaint and, therefore, denies

same.

## AS AND FOR A SIXTH CAUSE OF ACTION AGAINST WHIRLPOOL

36.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "35", inclusive, of the Complaint with the same force and effect as if set forth herein at length.

**RESPONSE:**   In answering Paragraph 36 of the Complaint, WHIRLPOOL repeats its responses to Paragraphs 1 through 35 of the Complaint above as though fully set forth herein.

37.     Whirlpool designed, manufactured, advertised, marketed, distributed, supplied sold, repaired, or maintained and/or serviced the Dehumidifier in a defective condition.

**RESPONSE:**   This allegation calls for a legal conclusion to which no response is required.  To the extent that a response is required, WHIRLPOOL has insufficient information to either admit or deny the allegations in Paragraph 37 of the Complaint and, therefore, denies same.

38.     The Fire and the subsequent damage to the Property, was caused by and resulted from the negligent, careless, reckless, and grossly negligent, acts and/or omissions of Whirlpool which is strictly liable by reason of:

a.     designing, manufacturing, advertising, marketing, distributing, selling and/or supplying a defective product which Whirlpool knew or should have reasonably known would subject plaintiff s subrogor to an unreasonable risk of harm;

b.     designing, manufacturing, advertising, marketing, distributing, selling and/or supplying a defective product which Whirlpool knew or should have known would endanger the real and personal property of plaintiff's subrogor;

c.     failing to properly and adequately warn of the limitations of said product;

d.     failing to provide adequate and sufficient warnings with respect to the Dehumidifier which thereby rendered the Dehumidifier defective and unreasonably dangerous;

e.      failing to distribute and/or supply a product that was safe for its reasonably foreseeable use and intended purpose;

f.      selling and/or supplying a dangerously defective product that posed a fire hazard;

g.      distributing, marketing, selling and/or supplying a product that was not safe for its intended use;

h.      failing to provide adequate and sufficient instructions and warnings with respect to the use of the Dehumidifier, including, but not limited to, a warning that the Dehumidifier or its components could result in a malfunction resulting in fire damage;

i.      failing to supply and sell a Dehumidifier that was reasonably fit, suitable and safe for its intended purpose;

j.      failing to comply with all local, state and federal codes, regulations, ordinances, standards, recommendations and/or requirements;

k.      designing, manufacturing, and/or assembling a product that was not safe for its intended use;

l.      designing and manufacturing a Dehumidifier that malfunctioned causing the Fire to ensue;

m.      failing to warn of the dangerous propensities of the Dehumidifier when Whirlpool knew or should have known that the absence of appropriate and sufficient warnings created an unreasonable risk of harm;

n.      failing to manufacture, design, sell, distribute and/or market a Dehumidifier which was safe for its intended use and purpose;

o.      failing to adequately, properly, and sufficiently test and inspect the Dehumidifier which tests and inspections would have revealed the existence of the dangerous condition of the Dehumidifier and/or potential failure of the Dehumidifier;

p.      failing to satisfy and employ proper, accepted, and/or recognized standards for the design and manufacture of its products; and

17

       q.    manufacturing, designing, selling and/or distributing a defective Dehumidifier that defendant knew or reasonably should have known subjected the property of plaintiff's subrogor to an unreasonable risk of fire damage.

**RESPONSE:**   This allegation calls for a legal conclusion to which no response is required.   To the extent that a response is required, WHIRLPOOL denies the allegations in Paragraph 38 of the Complaint.

39.    As a direct and proximate result of the negligent acts and/or omissions of Whirlpool, plaintiff's subrogor sustained damages in an aggregate amount in excess of $1,388,036.95 plus appropriate interest thereon from February 8, 2021.

**RESPONSE:**   This allegation calls for a legal conclusion to which no response is required.   To the extent that a response is required, WHIRLPOOL denies the allegations in Paragraph 39 of the Complaint.

<h3 align="center">AS AND FOR A SEVENTH CAUSE OF ACTION AGAINST COSTCO</h3>

40.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "39", inclusive, of the Complaint, with the same force and effect as if set forth herein at length.

**RESPONSE:**   In answering Paragraph 40 of the Complaint, WHIRLPOOL repeats its responses to Paragraphs 1 through 39 of the Complaint above as though fully set forth herein.

41.    Costco owed a duty of care to distribute, market, sell, and/or supply the Dehumidifier in a condition safe and free from manufacturing defect for its intended and reasonably foreseeable use.

**RESPONSE:**   As the allegations in this paragraph are not directed to WHIRLPOOL, no answer is required by WHILPOOL.   To the extent an answer is required, WHIRLPOOL has insufficient information to either admit or deny the allegations in Paragraph 41 of the Complaint and, therefore, denies same.

42.     Costco negligently, carelessly, and/or recklessly breached its duty of care in one or more of the following ways:

a.     marketing, selling, distributing, and/or supplying a defective Dehumidifier that Costco knew or reasonably should have known, subjected the property of plaintiff's subrogor to an unreasonable risk of harm;

b.     failing to supply a Dehumidifier that was safe and free from fire hazards for all reasonably foreseeable uses;

c.     selling and/or distributing a Dehumidifier that Costco knew or reasonably should have known, subjected the property of plaintiff s subrogor to an unreasonable risk of fire damage;

d.     failing to provide adequate warnings and instruction regarding the risk of malfunction and fire resulting in damage to real and personal property;

e.     failing to comply with applicable local, state, and federal statutes, codes, regulations and generally recognized safety practices and standards;

f.     failing to test and/or inspect the subject the Dehumidifier to determine whether the Dehumidifier could be safely used without posing a risk of injury to life and/or property;

g.     failing to meet the standard of care required by a reasonable distributor, in the sale and distribution of the subject Dehumidifier;

h.     failing to analyze prior incidents and injuries as well as predict future incidents through the use of hazard/risk analysis; and

i.     selling a Dehumidifier that malfunctioned, causing the Fire.

**RESPONSE:**  As the allegations in this paragraph are not directed to WHIRLPOOL, no answer is required by WHILPOOL.  To the extent an answer is required, WHIRLPOOL has insufficient information to either admit or deny the allegations in Paragraph 42 of the Complaint and, therefore, denies same.

19

43.     As a direct and proximate result of the negligent acts and/or omissions of Costco, plaintiff's subrogor sustained damages in an aggregate amount in excess of $1,388,036.95 plus appropriate interest thereon from February 8, 2021.

**RESPONSE:**  As the allegations in this paragraph are not directed to WHIRLPOOL, no answer is required by WHILPOOL.  To the extent an answer is required, WHIRLPOOL has insufficient information to either admit or deny the allegations in Paragraph 43 of the Complaint and, therefore, denies same.

## AS AND FOR A EIGHTH CAUSE OF ACTION AGAINST COSTCO

44.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "43", inclusive, of the Complaint with the same force and effect as if set forth herein at length.

**RESPONSE:**  In answering Paragraph 44 of the Complaint, WHIRLPOOL repeats its responses to Paragraphs 1 through 43 of the Complaint above as though fully set forth herein.

45.     Costco advertised, marketed, distributed, supplied, and/or sold the Dehumidifier in a defective condition.

**RESPONSE:**  As the allegations in this paragraph are not directed to WHIRLPOOL, no answer is required by WHILPOOL.  To the extent an answer is required, WHIRLPOOL has insufficient information to either admit or deny the allegations in Paragraph 45 of the Complaint and, therefore, denies same.

46.     The Fire and the subsequent damage to the Property, was caused by and resulted from the negligent, careless, reckless, and grossly negligent, acts and/or omissions of Costco which is strictly liable by reason of:

          a.     advertising, marketing, distributing, selling and/or supplying a defective product which Costco knew or should have reasonably known would subject plaintiff's subrogor to an unreasonable risk of harm;

b.      advertising, marketing, distributing, selling and/or supplying a defective product which Costco knew or should have known would endanger the real and personal property of plaintiff s subrogor;

c.      failing to properly and adequately warn of the limitations of said product;

d.      failing to provide adequate and sufficient warnings with respect to the Dehumidifier which thereby rendered the Dehumidifier defective and unreasonably dangerous;

e.      failing to distribute and/or supply a product that was safe for its reasonably foreseeable use and intended purpose;

f.      selling and/or supplying a dangerously defective product that posed a fire hazard;

g.      distributing, marketing, selling and/or supplying a product that was not safe for its intended use;

h.      failing to provide adequate and sufficient instructions and warnings with respect to the use of the Dehumidifier, including, but not lirnited to, a warning that the Dehumidifier or its components could result in a malfunction resulting in fire damage;

i.      failing to supply and sell a Dehumidifier that was reasonably fit, suitable and safe for its intended purpose;

j.      failing to comply with all local, state and federal codes, regulations, ordinances, standards, recommendations and/or requirements;

k.      designing, manufacturing, and/or assembling a product that was not safe for its intended use;

l.      designing and manufacturing a Dehumidifier that malfunctioned causing the Fire to ensue;

m.      failing to warn of the dangerous propensities of the Dehumidifier when Costco knew or should have known that the absence of appropriate and sufficient warnings created an unreasonable risk of harm;

n.      failing to sell, distribute and/or market a Dehumidifier which was safe for its intended use and purpose;

o.      failing to adequately, properly, and sufficiently test and inspect the Dehumidifier which tests and inspections would have revealed the existence of the dangerous condition of the Dehumidifier and/or potential failure of the Dehumidifier;

p.      failing to satisfy and employ proper, accepted, and/or recognized standards for the design and manufacture of its products; and

q.      selling and/or distributing a defective Dehumidifier that defendant knew or reasonably should have known subjected the property of plaintiff's subrogor to an unreasonable risk of fire damage.

**RESPONSE:**  As the allegations in this paragraph are not directed to WHIRLPOOL, no answer is required by WHILPOOL.  To the extent an answer is required, WHIRLPOOL has insufficient information to either admit or deny the allegations in Paragraph 46 of the Complaint and, therefore, denies same.

47.      As a direct and proximate result of the negligent acts and/or omissions of Costco, plaintiff's subrogor sustained damages in an aggregate amount in excess of $1,388,036.95 plus appropriate interest thereon from February 8, 2021.

**RESPONSE:**  As the allegations in this paragraph are not directed to WHIRLPOOL, no answer is required by WHILPOOL.  To the extent an answer is required, WHIRLPOOL has insufficient information to either admit or deny the allegations in Paragraph 47 of the Complaint and, therefore, denies same.

## AS AND FOR NINTH CAUSE OF ACTION AGAINST ABC CORPORATIONS 1-10 AND JOHN DOES 1-10

48.      Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs " 1 " through "47", inclusive, of the Complaint with the same force and effect as if set forth herein at length.

22

**RESPONSE:**  In answering Paragraph 48 of the Complaint, WHIRLPOOL repeats its responses to Paragraphs 1 through 47 of the Complaint above as though fully set forth herein.

49.    Defendants ABC Corporations 1-10 and John Does 1-10 manufactured, designed, distributed, sold, serviced, repaired, installed, and or otherwise maintained the Dehumidifier at the Property.

**RESPONSE:**  As the allegations in this paragraph are not directed to WHIRLPOOL, no answer is required by WHILPOOL.  To the extent an answer is required, WHIRLPOOL has insufficient information to either admit or deny the allegations in Paragraph 49 of the Complaint and, therefore, denies same.

50.    Defendants ABC Corporations 1-10 and John Does 1-10 were negligent, reckless, and/or otherwise failed to use due care during the course of inter alia, their manufacture, design, distribution, service, repair, installation and or maintenance of the Dehumidifier at the Property.

**RESPONSE:**  As the allegations in this paragraph are not directed to WHIRLPOOL, no answer is required by WHILPOOL.  To the extent an answer is required, WHIRLPOOL has insufficient information to either admit or deny the allegations in Paragraph 50 of the Complaint and, therefore, denies same.

51.    As a result of Defendants ABC Corporations 1-10, and John Does 1-10's foregoing negligence, recklessness, and/or failure to exercise due care, on or about February 8, 2021, Plaintiff's Subrogor sustained severe fire damage to the Property and its contents therein, causing Plaintiff's Subrogor to sustain damages in an amount in excess of $1,388,036.95 plus appropriate interest thereon from February 8, 2021.

**RESPONSE:**  As the allegations in this paragraph are not directed to WHIRLPOOL, no answer is required by WHILPOOL.  To the extent an answer is required, WHIRLPOOL has insufficient information to either admit or deny the allegations in Paragraph 51 of the Complaint and, therefore, denies same.

52.     Pursuant to a policy of insurance then in force and effect, and prior to the commencement of this action, plaintiff Narragansett reimbursed its subrogor for the above loss, and thereby became subrogated, to the extent of its payment, to all of Sawaris' rights, remedies and causes of action as a result of the Fire, including those against the defendants herein.

**RESPONSE:**  WHIRLPOOL has insufficient information to either admit or deny the allegations in Paragraph 52 of the Complaint and, therefore, denies same.

53.     As a result of the foregoing, Defendants ABC Corporations 1-10, and John Does 1-10 are indebted to plaintiff in an amount exceeding $1,388,036.95 plus appropriate interest thereon from February 8, 2021.

**RESPONSE:**  As the allegations in this paragraph are not directed to WHIRLPOOL, no answer is required by WHILPOOL.  To the extent an answer is required, WHIRLPOOL has insufficient information to either admit or deny the allegations in Paragraph 53 of the Complaint and, therefore, denies same.

54.     To the extent there are allegations in the Complaint to which Whirlpool has not responded, as to such allegations WHIRLPOOL has insufficient information to either admit or deny and, therefore, denies same.

## AFFIRMATIVE DEFENSES

### AS AND FOR A FIRST AFFIRMATIVE DEFENSE

The claim may be barred by the applicable statute of limitations.

### AS AND FOR A SECOND AFFIRMATIVE DEFENSE

The damages, if any, sustained by the plaintiff were caused by its sole, contributory or comparative negligence and in plaintiff's failure to make proper observations and exercise reasonable care under the existing circumstances.

### AS AND FOR A THIRD AFFIRMATIVE DEFENSE

24

Plaintiff's damages, if any, were caused by acts of third persons, entities or conditions over whom WHIRLPOOL had no control and/or no duty to control.

### AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

While denying any negligence on the part of WHIRLPOOL, should it be adjudged otherwise, then this defendant liability should be limited as provided by the terms and provisions of Article 14 of the New York Civil Practice Law & Rules.

### AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

While denying any negligence on the part of WHIRLPOOL, should it be adjudged otherwise, then WHIRLPOOL'S liability should be limited or plaintiff barred from recovery as provided by the terms and provisions of Article 14A of the New York Civil Practice Law & Rules.

### AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

The Complaint fails to state a cause of action upon which relief can be granted as against WHIRLPOOL.

### AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

The damages, if any, sustained by plaintiff were the result of an independent, intervening cause for which WHIRLPOOL may not be held liable.

### AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE

While denying any negligence on the part of WHIRLPOOL, should it be adjudged otherwise, then defendant's liability should be limited as provided by the terms and provisions of Article 16 of the New York Civil Practice Law & Rules.

### AS AND FOR A NINTH AFFIRMATIVE DEFENSE

Plaintiff failed to mitigate his damages and, accordingly, the Complaint should be

dismissed.

## AS AND FOR A TENTH AFFIRMATIVE DEFENSE

The products identified in the Complaint underwent substantial alteration after leaving the hands of WHIRLPOOL and, accordingly, the Complaint should be dismissed.

## AS AND FOR AN ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are preempted, in whole or in part, by Federal, State or local statutes, code and/or regulations.

## AS AND FOR A TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's use of the product was unintended and unforeseeable and, accordingly, the Complaint should be dismissed.

## AS AND FOR A THIRTEENTH AFFIRMATIVE DEFENSE

The product identified in the Complaint was state of the art at the time of its design, manufacture and marketing, and therefore, the Complaint should be dismissed.

## AS AND FOR A FOURTEENTH AFFIRMATIVE DEFENSE

Pursuant to CPLR §4545 and other applicable sections of the CPLR, WHIRLPOOL is entitled to a set off of collateral source payments.

## AS AND FOR A FIFTEENTH AFFIRMATIVE DEFENSE

WHIRLPOOL is entitled to the protection, provisions, and limitations of Section 15-108 of the General Obligations Law of the State of New York.

## AS AND FOR A SIXTEENTH AFFIRMATIVE DEFENSE

The product identified in the Complaint was not designed, manufactured, tested, sold, delivered, distributed, repaired, serviced, or inspected by WHIRLPOOL.

## AS AND FOR A SEVENTEENTH AFFIRMATIVE DEFENSE

WHIRLPOOL has not designed, manufactured, tested, sold, delivered, distributed, repaired, serviced, or inspected any dehumidifier with model number WDH70EAPW.

### AS AND FOR AN EIGHTEENTH AFFIRMATIVE DEFENSE

WHIRLPOOL reserves the right to amend this Answer and to add any applicable affirmative defenses after it has had the opportunity to discover further facts relevant to this action.

WHEREFORE, WHIRLPOOL CORPORATION demands judgment dismissing the Complaint along with the costs and disbursements of this action.

Dated: July __, 2023

HARDIN, KUNDLA, McKEON & POLETTO

_____

Mark Kundla, *Esq.*
Paul Daly, *Esq.*
Attorneys for Defendant
WHIRLPOOL CORPORATION

673 Morris Ave., Springfield, NJ 07081
O: 973-912-5222
Direct: 973-315-2244
Mobile: 908-377-2247
Fax: 973-912-9212

BOWLES & VERNA LLP
Richard Ergo, *Esq.*
Cathleen S. Huang, *Esq.*
Stephen P. Lin, *Esq.*
Attorneys for Defendant
WHIRLPOOL CORPORATION

2121 N. California Blvd., Suite 875
Walnut Creek, CA 94596

(925) 935-3300

## ATTORNEY VERIFICATION

STATE OF NEW JERSEY    )
COUNTY OF UNION          )  ss:

Mark Kundla, *Esq*., being sworn, deposes and says:

1.      I am a partner with the law firm of Hardin, Kundla, McKeon & Poletto, attorneys for defendant WHIRLPOOL CORPORATION ("defendant") in this matter.

2.      I have read the foregoing Answer and either know the contents to be true or they are alleged upon information and belief, and as to those matters, I believe them to be true based upon the materials supplied by and discussions with defendant.

3.      The reason this verification is made by deponent and not by defendant is that defendant's corporate headquarters and residences are not located in the County of Union, where deponent's law office is located, or in the County of Nassau, where this action is venued.


_____
Mark Kundla

Sworn to before me this
___ day of July, 2023.


_____
Notary Public

29